UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**HENRY RAY FRANCIS**                                    **CIVIL ACTION NO. 24-0723**

                                                         **SECTION P**

**VS.**

                                                         **JUDGE TERRY A. DOUGHTY**

**OUACHITA CORRECTIONAL**                                **MAG. JUDGE KAYLA D. MCCLUSKY**
**CENTER, ET AL.**

**REPORT AND RECOMMENDATION**

Plaintiff Henry Ray Francis, a prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately April 15, 2024, under 42 U.S.C. § 1983.[1] He names the following Defendants: OCC, Corporal Davis, Corporal Milstead, Medical Staff, Administration, Booking and Classification, Transportation, Nurse Norman, Ms. Wilson, and Dr. Boyle.[2] For reasons that follow, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff claims that when he was initially incarcerated, Corporal Davis and Classification Staff incorrectly housed him with federal inmates who "jumped" him, broke his tooth, and "beat [him] out of [his] commissary." [doc. #s 18, p. 3; 24, p. 2]. He alleges that he was supposed to be "placed in minimal security." [doc. # 24, p. 2]. He also claims that thereafter he was "moved to Dorm 301 where [he] was attacked, and [his] jaw was broken." [doc. # 18, p. 3].

---

[1] Documents 18 and 24 are Plaintiff's only operative pleadings.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff claims that "administration" failed him by not pursuing the inmates who attacked him. [doc. # 24, p. 2].

Plaintiff claims that he was placed in an isolation cell for discipline, even though he "had not committed any disciplinary acts." [doc. # 18, p. 3]. Plaintiff also suggests that, while in disciplinary housing, he missed court, medical call, meals, and showers. *Id.*

Plaintiff claims, "[a]ccording to Corporal Milstead I was without [a] mat or blanket for 4 months" while in disciplinary housing. [doc. # 18, p. 4]. In an amended pleading, he alleges that Corporal Milstead knew that he was housed in an isolation cell for several months without a mat or blanket. [doc. #24, p. 2].

Plaintiff claims that after his jaw was broken, he should have been assigned to "medical housing" instead of to an isolation cell, where he lacked a liquid or soft diet and daily medical attention. [doc. # 24, p. 1]. In the isolation cell, he was provided medication under a door, which dirtied the medication. *Id.*

Thereafter, "medical" moved Plaintiff to protective custody, where he was only provided Ibuprofen and unknown brown pills. [doc. # 24, p. 1]. He claims that "medical" does not allow him to have unspecified medication. *Id.* "Medical" also allegedly documented that they provided Mobic medication to Plaintiff, but he suggests that he did not receive it. *Id.*

Plaintiff claims, "Medical malpractice from surgery." [doc. # 18, p. 4]. He "now suffers nerve damage." *Id.*

Plaintiff claims that Nurse Norman and other staff "disregard[ed]" his medication and instead administered their own medical treatment, which caused nerve damage to his face and necessitated another surgery on August 17, 2024. [doc. # 24, p. 1].

Plaintiff claims that Ms. Wilson flushed his ears too hard, causing him Tinnitus. [doc. # 24, p. 4]. He suggests that a nurse recommended that he see a physician for Tinnitus, but he has not been to any appointment. *Id.*

Plaintiff claims that OCC Medical has not provided his medication for his "nerve problem." [doc. # 24, p. 1]. He also claims that OCC Medical convinced "the jail" that he had mental problems. *Id.* at 4.

Dr. Boyle gave Plaintiff a medication, Respidola, "for voices," but Plaintiff fears Dr. Boyle gave him a drug that is known to cause medical problems. [doc. # 24, p. 4].

Plaintiff claims that he was not provided any water during trips to "LSU Ochsner" which lasted up to eight hours. [doc. # 24, p. 3]. He was also only fed once during the trips. *Id.* He had to use the restroom while shackled and handcuffed, which made it difficult for him to pull his pants up and button his jumper. *Id.* On some days, he lacked his medication all day. *Id.*

Plaintiff claims that a form for filing a grievance under the administrative remedy procedure at OCC lacked "an area to properly fill out." [doc. # 24, p. 2].

Plaintiff claims that OCC holds his mail and opens his mail in his absence. [doc. # 24, p. 2].

Plaintiff seeks compensation, and he also appears to seek release from confinement. [doc. # 18, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Failure to Protect**

Plaintiff claims that when he was initially incarcerated, Corporal Davis and Classification Staff incorrectly housed him with federal inmates who "jumped" him, broke his tooth, and "beat [him] out of [his] commissary." [doc. #s 18, p. 3; 24, p. 2]. He alleges that he was supposed to be "placed in minimal security." [doc. # 24, p. 2]. He also claims that thereafter he was "moved to Dorm 301 where [he] was attacked, and [his] jaw was broken." [doc. # 18, p. 3]. He states that a local gang was housed in the dormitory. [doc. # 24, p. 2].

To state a failure-to-protect claim, a plaintiff must allege that a defendant's action or inaction amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Here, Plaintiff does not plausibly allege that any defendant knew that housing him with federal inmates or in a dormitory in which a gang was located exposed him to a substantial risk of serious harm. While Plaintiff may describe a general risk of harm from housing him with a local gang or with inmates charged with or convicted of federal crimes, he does not describe a substantial risk of serious harm to him. He does not allege, for instance, that the attacks were gang related or occurred because the other inmates were "federal inmates," that any defendant knew that the gang or other inmates posed a substantial risk of serious harm to Plaintiff, or when

and how a defendant had such knowledge (if at all).[4] *See Perez v. Anderson*, 350 F. App'x 959 (5th Cir. 2009) (officials did not act with deliberate indifference to the safety of a detainee, who testified in a murder trial against a gang member, when they placed him in general population where was beaten by another member of the gang; there was no showing that officials knew the detainee had testified against a gang member or knew that gang members in general population had committed violent crimes or had shown propensity for violence); *see also Williams v. Martin*, 570 F. App'x 361, 365 (5th Cir. 2014) (finding that the plaintiff did not state a claim because he "alleged only that defendants failed to curb abuse of prisoners" and did not allege that "prison officials acted with deliberate indifference to [his] safety."); *Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) ("the vague contention by Silva that, although the defendants knew of previous violent incidents, they declined to take unspecified protective measures to prevent future attacks such as the one on him, does not show that any risk to Silva was clear to the officers.").

At best, Plaintiff's claim that defendants should have known of a risk of harm sounds in negligence, but negligence "is insufficient to support a finding of liability." *Adames v. Perez*, 331 F.3d 508, 514 (5th Cir. 2003). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). "A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, n.8 (5th

---

[4] As the court stated in *Brown v. Harris Cty., Texas*, 409 F. App'x 728, 731 (5th Cir. 2010), the undersigned does not "suggest that jail officials have no duty to protect the inmates in their custody from assault by other inmates." "But maintaining safe and orderly prison is a difficult task, and even the most vigilant oversight may not be able to prevent every incident." *Id.*

Cir. 2002) (*quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see Mosley v. Anderson*, 425 F. App'x 343, 344 (5th Cir. 2011) ("To the extent that prison officials were negligent for not preventing the assault, Mosley is not entitled to relief on this basis.").

Accordingly, the Court should dismiss these claims.

### 3. Identifying a Responsible Defendant

Plaintiff asserts several claims for which he fails to identify a responsible defendant:

○ He was placed in an isolation cell for discipline, even though he "had not committed any disciplinary acts." [doc. # 18, p. 3]. He also suggests that while in disciplinary housing, he missed court, medical call, meals, and showers. *Id.*

○ He claims, "Medical malpractice from surgery." [doc. # 18, p. 4]. He "now suffers nerve damage." *Id.*

○ A nurse recommended that he see a physician for his Tinnitus, but he has not been to any appointment. [doc. # 24, p. 4].

○ He was not provided any water during trips to "LSU Ochsner" which lasted up to eight hours. [doc. # 24, p. 3]. He was also only fed once during the trips. *Id.* He had to use the restroom while shackled and handcuffed, which made it difficult for him to pull his pants up and button his jumper. *Id.* On some days, he lacked his medication all day. *Id.*

○ A form for filing grievances under the administrative remedy procedure at OCC lacked "an area to properly fill out." [doc. # 24, p. 2].

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Plaintiff does not sufficiently identify "any particular defendant's personal involvement

8

in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

Accordingly, the Court should dismiss these claims.

### 4. Entities Unamenable to Suit

Plaintiff names "administration," "booking and classification," "transportation," "medical staff," "medical," "OCC medical," and OCC as defendants, but these entities or groups lack the capacity to be sued and are therefore unamenable to suit. He claims for instance:

- ○ "Administration" failed him by not pursuing the inmates who attacked him. [doc. # 24, p. 2].

- ○ After his jaw was broken, "medical staff" should have assigned him to medical housing instead of to an isolation cell, where he lacked a liquid or soft diet and daily medical attention. [doc. # 24, p. 1]. In the isolation cell, he was provided medication under a door, which dirtied the medication. *Id.*

- ○ "Medical" moved Plaintiff to protective custody, where he was only provided Ibuprofen and unknown brown pills. [doc. # 24, p. 1]. He claims that "medical" does not allow him to have unspecified medication. *Id.* "Medical" also allegedly documented that they provided Mobic medication to Plaintiff, but he suggests that he did not receive it. *Id.*

- ○ OCC Medical has not provided his medication for his "nerve problem." [doc. # 24, p. 1]. OCC Medical also convinced "the jail" that he had mental problems. *Id.* at 4.

      ○ OCC holds his mail and opens his mail in his absence. [doc. # 24, p. 2].

      Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

      Here, the Court should dismiss Plaintiff's claims against these entities and groups because they do not qualify as juridical persons. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Aucoin v. Terrebonne Par. Sheriff's Off.*, 2022 WL 16657429, at *1 (5th Cir. Nov. 3, 2022); *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

      If by "staff," "administration," "medical," or other groups Plaintiff refers not to singular entities but to individuals within those groups other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

      As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

      Here, for instance, the undersigned cautioned Plaintiff that "Medical Staff" is not a proper defendant and that he should, if possible, identify a responsible individual(s). [doc. # 22].

Plaintiff filed an amended pleading, but he did not identify individuals within these groups. To the extent any named individual defendants are members of these groups, he does not explain how the named defendants participated in the deprivation of his constitutional rights. He does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *Alderson*, 848 F.3d at 421. Accordingly, to the extent Plaintiff names these entities as groups of unidentified persons, the Court should dismiss Plaintiff's claims against them.

**5. Medical Care**

Plaintiff raises several claims concerning lack of medical care. To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

11

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.").

Here, Plaintiff: (1) suggestively claims that Nurse Norman "disregard[ed]" his medications and administered her own medical treatment, "lead[ing] up to nerve damage" in his face; (2) Ms. Wilson flushed his ears too hard, causing him Tinnitus; and (3) Dr. Boyle gave him a medication, Respidola, "for voices," but Plaintiff fears Dr. Boyle gave him a drug that is known to cause medical problems. [doc. # 24, pp. 1, 4].

As to the first claim above, he does not explain what he means when he alleges that Nurse Norman "disregarded" medications. He does not specify the medications that Norman disregarded or specify the medical need for which he desired the medications. As Norman provided alternative treatment, Plaintiff simply disagrees with the treatment he did receive. *See Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference."); *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment.").

12

As to the second claim, Plaintiff does not allege that Ms. Wilson intentionally flushed his ears too hard. At best, he describes potential negligence, but "mere negligence will not suffice to support a claim of deliberate indifference." *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995); *see Thompson v. Sharad*, 847 F. App'x 223, 224 (5th Cir. 2021) (finding, where the plaintiff alleged that a physician injured him during surgery on his wrist, that the plaintiff at best pled negligence or malpractice). If Plaintiff intends to pursue a negligence/malpractice claim, he should do so in state court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .").

As to the third claim, Dr. Boyle prescribed Plaintiff medication, which absent more does not reflect deliberate indifference. As above, Plaintiff simply disagrees with the medication Dr. Boyle prescribed. *See Nall v. Yee*, 2023 WL 2755575, at *1 (5th Cir. Apr. 3, 2023) (holding, where a plaintiff claimed that a physician "prescribed medications he knew caused adverse side effects to [the plaintiff] instead of [the plaintiff's] preferred medications[,]" that the plaintiff merely disagreed with the physician's decision).

The Court should dismiss these claims.

**6. Conditions of Confinement**

Plaintiff claims, "[a]ccording to Corporal Milstead I was without [a] mat or blanket for 4 months" while in disciplinary housing. [doc. # 18, p. 4]. In an amended pleading, he alleges that Corporal Milstead knew that he was housed in an isolation cell for several months without a mat or blanket. [doc. #24, p. 2].

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require

that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[5]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference.  *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[6]  However, "Nothing so amorphous as 'overall conditions' can rise to the level

---

[5] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[6] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff claims that he lacked a blanket and a mat for approximately four months, but he does not claim that the absence of a mat and blanket deprived him of any identifiable human need. He does not, for instance, allege that he was deprived of sleep, warmth, or even exercise.[7] The undersigned could speculate how lacking these items could potentially impact one's health or safety under certain conditions, but Plaintiff is the master of his complaint, and he does not identify how the conditions impacted *his* health or safety. *See Clark v. Harris*, 30 F.3d 1493 (5th Cir. 1994) (holding, where a plaintiff complained of sanitation problems from a temporary lack of water at a jail due to a burst water line, that the plaintiff failed "to allege facts indicating that he was deprived 'of a single, identifiable human need . . . .'").

Similarly, Plaintiff fails to explain how he was exposed to a substantial risk of serious harm, failing to allege how the conditions impacted him. Likewise, while he thinly alleges that Corporal Milstead knew he lacked a blanket and a mat at some unspecified time, he does not allege that Milstead knew of a risk of harm that any scarcity posed to *Plaintiff*. He does not allege, for instance, that he informed Milstead that any condition or sum of conditions exposed him to a substantial risk of serious harm. *See Alexander v. Texas Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) ("While Alexander reported the cell conditions to officers on shift, he cannot make the requisite showing that they *in fact* 'drew the inference' that there was a substantial risk of serious harm.").

Plaintiff does not plausibly allege wanton infliction of pain or the type of "'cold hearted,

---

[7] For instance, Plaintiff does not specify if he lacked a mat for sleeping, exercising, practicing a religion, meditating, exiting a shower safely, or any other reason.

15

casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (observing that the Eighth Amendment prohibits the wanton infliction of pain). The Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Henry Ray Francis's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of September, 2024.

                                                       *Kayla Dye McClusky* (signature)
                                                       Kayla Dye McClusky
                                                       United States Magistrate Judge